Our third and final case this morning is 23-1835 Keys Law Firm v. Napoli. Mr. Willett. May it please the court, Henry Willett on behalf of the Napoli appellants in this matter. This case has been around since 2017, the original iteration of the district court case. And through that time, it has seen hundreds of docket entries and numerous assertions of wrongdoing and other allegations between plaintiff's firms that represent folks in asbestos litigation. And indeed, that's what the underlying matter relates to, agreements and fee and referral sharing for asbestos litigation. However, despite all of that, in this matter, the matter before this court, there are really two discrete issues that the court must address. First, whether the district court abused its discretion by ordering sanctions for conduct occurring outside of its jurisdiction in New York State, in New York Federal Courts. And number two, whether the district court abused its discretion in refusing to consider as part of its lodestar analysis, whether the attorney's fees and costs sought in this matter were reasonable considering the amount in controversy and the results obtained. Taking those arguments in order, we believe that the district court did abuse its discretion in sanctioning the Napoli defendants pursuant to its inherent powers for conduct and lawsuits that were filed in both New York State court, well, two different actions, both filed in New York State court, one of those dismissed shortly thereafter, the other one ultimately removed to the Eastern District of New York. And the reason is this, the court, the district court failed to apply the proper standard. The proper standard as set forth in the case chambers versus NASCO established by the Supreme Court and in the circuits that have interpreted that case in the years following is that the conduct must occur within the case before the sanctioning court, or it must be in defiance of the sanctioning court's order. Inherent powers necessarily exist to allow a court to manage its own affairs, not the affairs of a separate sovereign. And indeed, that's what was at issue in the chambers case. In that case, there was the argument was made that the district court could not impose inherent power sanctions before other, for actions occurring before other tribunals. And the Supreme Court ultimately found as long as a party receives an appropriate hearing, the party may be sanctioned for abuse of process occurring occurring beyond the courtroom, such as disobeying the court's orders. That's not a such as that's not a limiting principle. That's just an example of the by which the court may sanction, right? That is correct. It was it was a such as your honor. But I think you have to look at it in the context in which chambers was decided. In that case, you had an underlying dispute where one of the parties was basically trying to get out of a deal. And the court issued an order stating that the status quo must be maintained. In that case, the party chambers attempted to go around the court's order and to obtain permission from the FCC to build an additional communication tower, which in essence would have obviated the ruling of the underlying dispute. Was that any different from what the district court found here that your client's doing an around by litigating in New York to stop the litigation in Maryland? Well, there are a couple of distinctions, your honor. First and foremost, in chambers, the court had issued an order saying maintain the status quo, right? This was the party realized that there was a chance that this deal was going to blow up. They went to the court. They obtained that order from the court. And what the court found was by going to the FCC and seeking this permission, there was direct disobedience of a court's order. And that's the important part. That's right. That's what happened there. But again, I go back to the language of the Supreme Court that use that as but one example, presumably of what might warrant sanctions for activity occurring outside of the court's immediate jurisdiction, but impacting the court's ability to do its work. And that's what the allegation is here. Well, the allegation obviously here is a little different than obviously what was before chambers. Absolutely. But that doesn't mean the chambers doesn't have application beyond the facts of that case, right? It certainly could, your honor. And I think it's instructive to look at the other circuits that have reviewed cases along this lines. One of those critical cases that we cite in the brief is FDIC versus Maxim. In that case, it was before the Fifth Circuit. And there were very similar allegations to what we have here. It was ultimately determined that the FDIC, through basically funding of an agency, had attempted to divert the defendant's attention, raise their litigation cost, and basically cover the same issues that were already pending before the district court. That sounds like this case. Well, yeah. But in that case, that's my point, your honor. But in that case, the court, it ultimately, the Fifth Circuit ultimately said, that's not enough, right? Because the bad faith conduct has to be in defiance of the sanctioning court. It's not enough, you know, they want to espouse this obvious linkage thing where you've got similar parties. There was obvious linkage in FDIC versus Maxim. They were the same parties, essentially. One was direct and one was indirect. But they were essentially the same parties. And what the court found there was, you know, the allegations were the same. Okay, you filed a separate matter through an administrative agency attempting to disrupt the proceedings by disrupting the parties. And the Fifth Circuit said, that's not enough. It's got to be in direct defiance of the actual sanctioning court. Either disobeyance of the order, if it's something outside of the court, or within the court, if it's in defiance of the court itself. I don't think it's that limited. What you did here was that you waged a collateral attack, essentially, upon a federal judgment in a state court. And you acted in direct defiance of the district court's ruling and order. You went to another state and you tried to get that ruling annulled. And this is, you went to New York State Court to get the ruling annulled at a very time that the Maryland suit was still pending. And the question is, is there a sufficient link to what the district court was deciding for the district court to impose sanctions? And if we don't back up a district court in a situation like this, I don't know when we would ever do so. Because, as I say, you acted in direct defiance of the litigation of the Maryland district court. Both of the New York suits, which were brought under state law, were dismissed as frivolous. And the connection between what you tried to do in New York to what's going on in Maryland is so clear and so strong that the alternative that you're arguing is that a district court has no authority to vindicate its rulings in any other courtroom than its own. And I can't imagine what the implication of that rule would be. Judge Wilkinson, I'm going to try and not break any china in responding to that. But I think you raised a good point. And there is a distinction to be made here, Judge. The difference is, this is why I cite to the court the FDIC versus Maxim case. Because that's exactly the types of assertions that were made in that case. That even though you're basically going to another venue in attempting to circumvent the authority of the underlying district court. But here's the distinction in what the courts have found. Counsel? Yes, Your Honor. Thank you. In the Maxim case, didn't the defense say specifically that the actions of the other tribunal did not challenge the district court's authority? That was the basis of the district ruling. That's correct. And that's the point I was going to get to in addressing Judge Wilkinson's point as well. There was no order. If you look at the report and recommendation in the ultimate to the New York court, what the court found, and these are critical. Well, there was a decree in Toledo. Now, Toledo preceded Chambers. But there was a decree in that case that they thought that they were attempting to obstruct. And I think that's the main distinction between what we have here and even in other cases that we've seen, is there was an actual decree. I would actually say that Toledo lines up with Chambers in that way because there was an actual decree or order that was being attacked in that instance. And I do think that's why it's important here to focus on what the report and recommendation said and the order adopting it said. It focused on when it said disrupt the court or disrupt the proceedings, it said there's no other logical explanation for the filing other than to harass the plaintiff, divert the plaintiff from the Maryland action, and cause them to incur additional time and expense. These are the same types of allegations that were made in the FDIC case that the court found, no, that doesn't go far enough. Now, if you have a situation like Chambers or Toledo where there's an actual order or decree that someone's trying to get around by going to this other agency or court, that's a different story altogether. The Chief Judge suggested to you that the Chambers decision talked about the order as illustrative rather than necessarily exclusive. And a number of courts seem, several other courts seem to have indicated that. But isn't the question here whether there is a significant linkage between the obstructive behavior in another jurisdiction and the case before the district court? Judge Wilkinson, the case law that's relied upon for this significant or obvious linkage is a case from a district court case from Alabama. And in that case, they actually didn't end up relying on it. They just found that there was no linkage. And what I would assert, based on the case law we've cited from the Fifth Circuit as well as the Sixth Circuit, that you have to have more than an obvious linkage, than an obvious connection between the parties, because that's what you had in FDIC. I think the Sixth Circuit addressed this a little more carefully in saying that the point of Chambers was so that a court could manage its own affairs, so as to achieve the orderly and expeditious disposition of cases. It did not authorize, Chambers did not authorize courts to infringe upon the sovereignty of other courts. So let's look at this example here. The second case was removed from state court to federal court in New York. I mean, that's kind of a rich argument for you to be making. Saying that the district court in Maryland is infringing upon the sovereignty of the courts in New York, because those courts had the opportunity. But you weren't impinging on the sovereignty or the proceedings of the district court in Maryland? Because there was... I don't know, there's just an irony in your argument. It's striking me. I understand your point, Your Honor. I don't want you to be hoisted on your own petard. I appreciate the warning, Your Honor. And what I would say is... You're breaking a bit of China, I think. Yeah, I'm tiptoeing lightly here. But what I would say is this. There has to be a line drawn. If you look at the example that we have here, where there's a separate action that's filed in New York, that's removed to federal court. They moved for sanctions in that court, ultimately. The matter was voluntarily dismissed. As the record shows, they asked that court, nevertheless, to rule in the sanctions motion. And the court said, take it up with the district court in Maryland. It wasn't a transfer. They just said, take it up with the district court in Maryland. So in that instance, they chose not to do anything. But what if that court had chosen to do something, and they had denied the request for sanctions? Could they then seek sanctions in this court? Or what if that was happening contemporaneously? That's the problem with just adopting an obvious linkages test. Which again, the 5th Circuit has denied, and the 6th Circuit have denied, and this court, of course, hasn't accepted, is that you run the risk that every time you have collateral issues, you could have two courts seeking to impose sanctions for the same actions. The last point, and I know I have some rebuttal time, but I'll just address very quickly, unless the court has any other questions. I do want to address the second argument. This is very straightforward. There are 12 factors that are required in assessing the reasonableness of attorney's fees. And this court, in a prior sanctions motion against various Napoli defendants, stated specifically that those 12 factors from Johnson v. Georgia must be looked at and reviewed. I understand that, but before we get there, in the New York suits, in your prayer for relief, does it matter that the state court, that the prayer for relief was that the state court require keys to abandon its lawsuit in to the prayer for relief and see if the prayer for relief in the New York cases not only impinged upon an order for the district court, but directed the district court to issue an order dismissing the case? Would it have to be the connection, would it have to be in defiance of an existing court order, or is it enough for the prayer for relief to direct the district court to issue a particular order, in this case, to dismiss a case that was before it? There's a distinction here, Your Honor, Judge Wilkinson. In the New York case, they sought the relief from the party. The relief was that the party be required to discontinue its prosecution of the District of Maryland case. It wasn't seeking direct relief as to any that the state court had to make some ruling with respect to what the District Court of Maryland could do. It was asking for that relief as it pertained to a party and saying the party should discontinue or requesting that the party discontinue its prosecution of the case in Maryland. And so I think that's the distinction there. It was seeking to do something specific to a party as opposed to seeking to disrupt the actual order of the District Court of Maryland. We can have litigants running all over the country launching collateral attacks and asking as a prayer for relief that the original forum enter a particular order dismissing its case. That seemed to me to be a bit of a confusing situation. Anytime you don't like the way a district court case is going, you head off to a state court in another case and in your prayer for relief you ask that the district court in Maryland be commanded to take a certain action which the state court doesn't even have the authority, I would think, to issue that kind of directive. And I know I'm out of time. If I could just answer Judge Wilkins So again, two distinctions here, Judge. First of all, here they weren't asking that the New York court direct the Maryland court to do anything. It was directing that the party, that an order be entered that the party... They were asking the state court to direct the Maryland court to dismiss the complaint. No, your honor. They were asking that the state court direct the party to discontinue the lawsuit. So it was a request as it related to the party. But regardless of that, the relief that needed to be requested was within that court. If there was something that was done, if that was sanctionable conduct by filing that lawsuit, if that was frivolous or otherwise, then that relief needed to be sought as it was, but it needed to be obtained in the Eastern District of New York. There's a big distinction between directing the district to abandon the lawsuit. I do think there's a distinction in the way that courts have analyzed this. Well, maybe so, but is that not a distinction without a difference? I do think it's a difference because it's one thing as the magistrate found here to do something that disrupts a party to litigation. It's another thing to do something that disrupts a court. And I do think that those two distinctions. You don't think this disrupts the court? In practical terms, how can that be? Because it's not in defiance of the court itself and it's not in defiance of the court's order. I understand the point that, okay, because that party is going to be distracted by this other lawsuit, their attention is going to be distracted from the District Court of Maryland. But that's not what chambers opened the door for. That's not what chambers established. So the party before the District Court is now going to be engaged not just in trying to follow the District Court's discovery orders and the like, but to defending upon two or three fronts simultaneously. What does this do to the desire of a district court to have the parties before the court concentrate on the proper resolution of what is before them? Is that not a preferable situation to having litigation in connection with the lawsuit sprawling over the country? Well, that's exactly what the District Court found in the FDIC versus Maxim case. The District Court said, yeah, this is deplorable. We shouldn't have, this party shouldn't be attacked on multiple fronts. This issue is already before the District Court. But the Fifth Circuit came back and said, yeah, but that's not what chambers permits. Chambers is more limited than that. It has to be in direct defiance. I don't understand that narrow ruling to chambers. Again, the question is whether it was meant to be exclusive or illustrative. I don't think it's necessarily unfaithful to chambers to look upon that language as illustrative. Do you have anything else? I do, but I guess I'll reserve that for, yeah, unless you want me to address anything on the second argument. Well, let me ask Judge Bernhardt. Go ahead. I have a question on the second argument. All of the cases that you cite in support of your argument that the Abe-Johnson factor wasn't considered for our patient cases, and I don't see how that factor comes into play here when we have a sanctioned court. That's a great question, Judge. The case we do cite that's very critical, or there are a couple. One is this court's prior decision in the earlier Keyes v. Napoli appeal that occurred with the decision on August 4, 2022, that we cite in our brief, and that also relies specifically on the Barber v. Kimball case. In that case, dealing with sanctions, the Fourth Circuit found that you do have to look at and you do apply the 12 factors. It was in to address the point that's been raised. There is no case law that we could find, and none that has been cited that says where you have a sanctions motion, where you're seeking fees on a sanctions motion as opposed to a prevailing party theory, that it changes the standard, that you somehow, because it's sanctions, you don't have to look at and address those 12 factors. Yet, nevertheless, both in the report and recommendation itself, in commentary at the hearing, and then in the district court's adoption of the report and recommendation, the court found that it did not need to consider the 12 factors because this was a sanctions matter as opposed to a prevailing party matter. All right. Thank you, Mr. Willett. Thank you. Mr. Schuster. Good morning, and may it please the court, my name is David Schuster. This is my law partner, Lewis Malick. Mr. Malick will argue why the court did not err in addressing the Johnson factors, particularly the eighth Johnson factor. I will argue why the district court did not err in exercising its inherent authority. The argument that you need to meet is that the chambers established a bright line rule that said in order for the district court to be obstructive behavior to the point of a violation of a court order, and that the linkage test might be indeterminate in some way, and that's the point that you need to respond to. Okay, thank you, your honor. Chambers just didn't limit its holding in that way, as your honor pointed out in its question to counsel. What language do you point to in chambers? It was a such-as language. Actually, chambers has, I'm sorry. Okay, so such-as language is classic illustrative. Illustrative rather than exclusive. Correct. It's not, I don't think chambers at that was attempting. I mean, such-as is classic illustrative language. Yeah, I want to address it in two ways. If it were limiting to violation of a discrete order, we have that here. We have a number of orders and rulings that were, that Mr. Napoli was attempting to subvert when he went to New York and filed his New York actions. So I think I meet that. If that's the standard, I meet it. Now, did the Fifth Circuit disagree with you on this? No, the Fifth Circuit. Tell us why we wouldn't be creating a circuit conflict with the Fifth Circuit. Okay, so all of the cases that are cited by Napoli, the Fifth Circuit cases, and we can talk about the FDIC case. That was the one that was discussed, featured in counsel's argument. In that case, the Fifth Circuit specifically held that there were two actions. There was the FDIC's, I'll call it claim for damages against the bank principle and the bank failure. And then there was a separate administrative action that was by the FDIC brought by the OTS. And the Fifth Circuit specifically held that the administrative action was statutorily had to be brought. It was not an attempt to subvert the federal court action. Moreover, the FDIC in the federal court action specifically requested that the administrative action be stayed pending the outcome of the administrative action. So I think the Fifth Circuit observed, yeah, in that situation, you had a... And your view is that this is much more directly obstructive. Yes. I mean, the OTS statutorily had to bring its investigation and had to go through that administrative process. The FDIC had a separate proceeding that it asked to be stayed for the obvious reason of not to disrupt the federal action. The FDIC had to file the... They're saying, your opponent is saying it's not disruptive to require keys to abandon its lawsuit in Maryland. I gather you take issue with that. You think that's about as disruptive as it can be. I can't think of anything any more disruptive. We had Judge Bennett telling the defendants, we're not going to dismiss the lawsuit. He ruled that the motions to dismiss were denied. Several motions to dismiss were denied. Motions for judgment on the pleadings were denied. A motion for relief to amend the complaint was granted, which meant the judge rejected their argument that the amendment would be futile. The judge issued a series of discovery orders directing them to produce ESI, directing them to provide an accounting, which is the requested relief in one of the of our complaint, issued any number of orders that standing alone or in combination demonstrated that Judge Bennett was proceeding full steam of... You're saying it would be hard to find a collateral attack that was more disruptive. It was in defiance to the whole thing. It wasn't just in defiance to any particular order. It was in that regard, but it was in defiance of the entire proceeding. After having been told by Judge Bennett that the case is moving forward, your motions to dismiss are denied. If we countenance this, there would be lawsuits mushrooming around different courts in the country trying to persuade a second tribunal to end the proceedings in the first tribunal that the collaterally attacking party didn't like the way it was going. Yes. The answer is yes, and I can't think of another case that is more deserving of the use of the court's inherent authority. If this case isn't it, I don't know what it is. The other cases didn't involve activity that was this much in defiance. No, not at all. I'm wondering, too, thinking about the relationship between district courts and appellate courts, if this isn't the kind of case that an appellate court needs to back up a district court on when its authority is being challenged in this direct way if the circuit isn't willing to back up a district court on these kinds of facts, I wonder what kind of message it would send. I thought of that, too, Your Honor, and I think it would send the absolute wrong message. It would send the wrong message to Mr. Napoli on an individual level, but it would also send the wrong message to litigants in general. You know the old adage, it's an old chestnut, but still sometimes old things have their value, that if you don't like the way the district court litigation is going, well, what should you do? Run off to New York or should you wait and take an appeal? And the normal course that our system prescribes for litigants who don't like what a and ask the appellate court to direct the district court to dismiss the case, but not to run off to New York and ask the state court to take an action that would normally and customarily belong in a circuit court. It never occurred to me in my career that that would be an option on the table to run to New York after all of Judge Bennett's rulings, to run to New York and then seek to have my client enjoined from prosecuting the case. In fact, didn't the magistrate judge say that any first-year law student would know that there's something wrong with that? Yeah, he did say that. And I want to address one comment that Mr. Willett made about, it was a hypothetical, we did ask for sanctions before Judge Hurley in the Eastern District of New York. And as the court is aware, Judge Hurley directed in his docket note that we take the matter up in the District of Maryland, which we did. But let's play pretend for a second and say that Judge Hurley entertained our motion for sanctions and he denied it. And then Mr. Willett in his argument said, well, what then would happen? Would Keys, would my client go to Judge Bennett and ask Judge Bennett to do something different? And the answer is, absolutely not. We would not do that. Judge Hurley ruled. My recourse there is to appeal the ruling. But I wouldn't do exactly the same thing that Mr. Napoli did and try to get another court to try to make an end run around the other court's ruling. That's not how it works. And that's exactly what Mr. Napoli did in the first instance. He set the whole thing up. He was disappointed with the rulings he was getting. And he thought it would be a wise strategy. It was a terrible strategy. It was the worst strategy. We get sanctions appeals all the time. I don't know. I seem to recall that they appealed some sanctions in an earlier case, in an earlier iteration, an earlier appeal. They appealed Judge Bennett's... Part of the question is, in this kind of case, where does the relief lie? I'm not prepared to say that the sanctions weren't excessive. The sanctions may or may not be excessive. I just don't have it before me. I don't think that's this case. But it would be open to them to say that it was an abuse of discretion to impose sanctions in this case. But that's not how it's spooling out. That's not what they did. All of the findings of fact, by clear and convincing evidence, they were not challenged on this appeal. They were not challenged. So the good news for the court is that's not an issue that the court needs to be concerned about. And look, I think Mr. Willett, I want to say this, he was not involved in the underlying case. So this is... He had nothing to do with all of the craziness that Napoli imposed on the court and on us. And I give him credit for not arguing here that the findings of fact were erroneous or without evidence. There was plenty of evidence to support those. And I think it was... And I respect Mr. Willett for not challenging that here. Yeah, I appreciate that. But before you sit down, maybe you can respond to this. You are asking that we sanction the appeal as being frivolous. And so that's a little bit different, I guess, than the conduct that we're talking about in the district court. Given the lack of authority in our circuit as to the extent of chambers, why would this appeal be frivolous? Yeah, I think the... And I'll be super brief on this, Your Honor. The findings of fact by the district judge were devastating. I don't... I could spend five minutes reciting them. They were devastating. Given those findings of fact, that what was... And the specific finding that the actions in New York were intended to disrupt the proceedings here in Maryland, given that finding, I think chambers is... I don't think there's any other reasonable way to look at it. That's dispositive as far as I'm concerned. And I'll submit on my brief with respect to my other arguments, Your Honor. All right. Thank you. Thank you. Mr. Malik? Oh, I'm sorry. Judge Berna, before Mr. Schuster sits down, do you have anything? Well, I just wanted to make this clear. Okay. Uh-oh. Thank you, Your Honor. And may it please the court, Louis Malik, and I will address the second issue regarding the application of the Johnson factors. And I at least agree with Mr. Willett that I think this is a very straightforward issue. But I think that the appellant's argument rests on at least two false premises, which are that the district court, in their view, ignored or did not consider the eighth Johnson factor, which is not accurate. And that second, fashioning a fee award, trial judges must consider and make findings with respect to each and every one of the 12 Johnson factors. Really, the trial judges must give weight to every factor in every case, which we don't believe is the law, particularly when it comes to sanctions for misconduct, which we have here. So first, the district court did consider the eighth Johnson factor, which is the amount in controversy and the results obtained. Both Judge Copperthite and Judge Rubin were well aware of this issue. They considered it and they explained that they were giving it no weight. Judge Copperthite addressed the evidence on this issue and the arguments and said not only are these arguments irrelevant, they're just another means of unnecessary litigation. He called them specious. And Judge Rubin fully affirmed these findings in adopting the R&R. She pointed out that Judge Copperthite delineated all 12 factors and she adopted and adopted the plaintiff's analysis. And Judge Rubin agreed that they were specious and irrelevant, the defendant's arguments, because the sanctions requested were for misconduct. And that's what makes this different from the cases that the appellants cite. This is a case about misconduct, which is a wholly different area than cases deciding what award should be given to a prevailing party under a statute. The basis of the award here was to compensate the plaintiff, KLF, for the extra time and effort that it and its attorneys had to expend as a result of the misconduct. This was not a prevailing party fee award. I don't think there's any dispute about that. But is there a analysis of reasonableness even with respect to the time and energy spent? I mean, is it, you don't have a, it's not a limitless ceiling, right? There's got to be some ceiling that attaches to the award. Right, Your Honor. And I think this is another area of disagreement between the two sides here as to what the limiting factor should be. And the limiting factor when it comes to sanctions for misconduct is what cost the misconduct cost. I think we see that in the Goodyear case from the Supreme Court. And that's really the limiting factor here. That's the measuring stick, is what problems did the misconduct cost? What did it cost to respond to them? What were the extra costs imposed on the plaintiff? And that's what the district court considered. And we think that's really the issue here. And some of the prevailing party fee award cases, including this court's decision in Shepard, even talk about the congressional intent, which is not an issue here. The congressional intent under a fee-shifting statute is generally to provide an avenue for a plaintiff to pursue meritorious claims, while at the same time not creating a source of funding for plaintiff's lawyers. That's not what we're dealing with here. This is about the cost of responding to a party's misconduct and the sheer havoc that it wreaked in the litigation, as Mr. Schuster discussed with the court earlier. So that is the relevant measuring stick. This is not a case of a plaintiff's counsel willingly putting more work into a case than it's worth just to try to get a bigger fee award. That couldn't be further from what happened here. This is a case about a plaintiff's counsel very unwillingly being forced to put much more work into the case than it ever should have had to do as a direct result of the defendant's litigation misconduct. So that's the limiting factor here, and it's the appropriate measuring factor, and it's what the district court did. The appellant spent a lot of time talking about the settlement offers that were made, and that's simply not relevant. The settlement could not erase the cost of the misconduct that had already been caused, that had already been incurred, and the district court recognized that it was really beside the point and so appropriately did not consider those. And just getting back to the cases, the appellants have put a lot of weight on this court's prior decision in a previous appeal in this case, and in particular footnote five. And all the court said in that footnote is the 12 fee shifting factors of Johnson are used to determine reasonable attorney's fees. That's not a comment on the issue that we're facing in this case. And the court cited there to its decision in Barber where it adopted the Johnson factors, and all the court said in Barber was that these factors must be considered, and then it said an award must be accompanied by detailed findings of that with regard to the factors considered. Now that sentence can only mean that not every factor is going to be applicable or have equal weight or even require any weight in every case. And the trial judge is required to look at the case and determine which factors are applicable, which factors should be given weight based on what's before the court. And that's what the court did here. The court was well aware of all 12 factors and based on the devastating and simply unchallenged findings of misconduct and the court arrived at the decision that it did and made the award it did. Based on the findings that Judge Rubin said, she adopted Judge Copperthwite's finding of intentional misconduct strategically designed to harass the opposing party, waste the time and resources of the district court, and blatantly defy the orders of the district court. That's what the court was dealing with. That's what my client, KLF, had to deal with below, and that's what the court entered an award to compensate for. And so for those reasons, we would ask the court to affirm in every respect. Judge Berner, do you have any questions? Thank you, Your Honor. Thank you. May it please the court, just a couple of quick responses to the arguments that were presented. I want to make one point abundantly clear. If this court were to find that the district court abused its discretion by exercising its inherent powers to sanction for conduct occurring in another jurisdiction, that in no way condones the action of actually filing that matter. That simply establishes that for this court, it did that for the district court. It didn't have the authority to do that. The remedy for that sort of behavior is applicable in that court. That's what Chambers said. One of the critical things we've talked about the such-as and whether that's illustrative, and I agree that typically such-as is illustrative, but it's also notable what Chambers didn't do. It didn't go further. It didn't say, oh, it's court orders or anything that in any way disrupts the court. In fact, what Chambers did is after making that statement, it came back and said, because of the very potency, inherent powers must be exercised with restraint and discretion and fees may be shifted in narrowly defined circumstances. No one disputes that. No court, no judge that I have heard thinks that a district court can just start issuing sanctions here, there, and yonder, but I think that in terms of the Supreme Court's case in Toledo and in the fact that Chambers uses such languages, such-as and everything, that district courts have to have some kind of authority to protect the integrity and the wholeness of the litigation before them and to strip them of that authority under circumstances such as these, when both within the Maryland court and in New York, it seems to me that the singular aim was to sabotage the litigation. I think that the absence of a limiting principle, if we authorize and said, well, that's fine, I'm concerned about encouraging litigants to move collaterally against district judges and not to take what I have thought was the normal course of taking an appeal. District courts wander off sometimes. They make erroneous sanctions awards and the like, but if you don't like them, maybe the best course seems to me to go to the circuit rather than head off to New York. There's something to be gained by regular order and straightforward paths, and this seems to me to open up a new front, and I take everything you say about the fact that Chambers is not open-ended. There has to be a strong connection, but I think that the idea that this is limited in some way or that there's a limiting principle to your position seems possibly illusory. Understood, Your Honor, and I would just encourage the court, as it considers what is an issue of first impression for the Fourth Circuit, to look at the cases in the reasoning that the Fifth Circuit and the Sixth Circuit have adopted, because they have shared the concerns of this court in determining and fashioning their interpretation of Chambers in a way that they think provides protection from these sorts of activities that instills the idea that the inherent powers protect that court. But nobody's talking here about flinging the door open wide for district courts to be issuing sanctions orders here and there and yonder. I haven't seen that happen very much. I think district courts are generally folks with a very sensible approach to what's before them, and they know that they shouldn't just go wild and issue sanctions in this state and that state and the rest. It has to be something that strikes them as very provocative and an attack upon their core function of trying to resolve a lawsuit in the most expeditious way, in the most orderly way, and having the action spread out over several states and several courts would strike a normal and reasonable district judge as a direct assault on what it's trying to do, which is to the great credit of our district judges to resolve the issues before them conscientiously, expeditiously, and this impedes that materially. Appreciating that, I started with that argument first. If I could just briefly address the second point on fees. I just want to address this because this issue likewise has not been decided by this court. Maybe this court ultimately decides, well, you don't have to consider all 12 factors in every case, or maybe there's some different rule ultimately that's determined to be applicable in cases involving awards of attorney's fees as sanctions as opposed to a situation where it's a prevailing party provision, but that law doesn't exist right now. Our point is, under the current law, you have to consider those factors. For better or for worse, the district court was very clear. It found them to be irrelevant, specious, not to be considered. In fact, it went on to really hit that point home. It said that it was making that determination because this was a sanction, not a fee-shifting situation. Again, the district court Judge Rubin said that, specifically in the order granting or adopting the report and recommendation, and Judge Copperheight at the hearing and in the report and recommendation makes this point. This is not a motion for fees. This is a motion for sanctions, and that's the point we make, that that distinction has never been drawn. Why does that matter? Why is that relevant? Because we're talking about a case where, ultimately, there was a recovery of $861,000 in principle, and there was interest added to that, but $861,000 in principle, and we're talking about a total attorney's fees award of more than a million dollars. If you add this, and again, I know I'm opening the door at this, but you add this to the other sanctions in this matter, you're going to have a case with sanctions worth more than $1.3 million for a case that the principal amount at issue was $861,000. I'm not saying that the district court should have necessarily said, okay, well, that means there should have been no award of fees, but it had to consider it. It had to at least apply the Johnson factors and say, okay, let's look at the amount in controversy and the result obtained. Does this make sense to award this level of attorney's fees in a case that awarded that little amount? And yes, those cases that we've cited do stand for the proposition that you must look at factors, or you should look at factors like settlement offers and things, and the fact is that there were settlement offers in an offer of judgment that were made. The offer of judgment was just below the amount actually obtained, the $861,000, and there were settlement offers made of actually more than the $861,000 that could have been accepted and could have brought this litigation to a conclusion. And again, we're not saying that this court has to decide that amount, but it should refer it back to the district court so the district court can properly consider the eighth factor and ultimately make that determination. So you're saying that the amount is still open? We believe the amount is still open, that they should consider that factor. You don't think that's necessarily before us in this appeal? No, I think this court should refer it back to the district court to apply the eighth factor and to make that determination. All right, thank you, Mr. Willips. Did you want me to address the sanctions argument? I didn't think that was necessary. Thank you. I want to thank counsel for their arguments here this morning. We really appreciate your being here with us. And with that, the court will stand adjourned until tomorrow morning. We'll come down and re-counsel and adjourn for the day. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court. Thank you.
judges: Albert Diaz, J. Harvie Wilkinson III, Nicole G. Berner